**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **TRENESA THOMAS as the** | ) | |
| **Administrator for the estate of** | ) | |
| **DORA PARKER BERNARD,** | ) | |
| **now deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:06-CV-00308-WHA** |
| | ) | |
| **MITSUBISHI MOTORS NORTH** | ) | |
| **AMERICA, INC.; et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS MEMORANDUM BRIEF
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

COME NOW the Defendants, Mitsubishi Motors North America, Inc., and Takata Corporation (collectively referred to herein as "Defendants"), and submit the following Memorandum Brief in Support of its Motion for Partial Summary Judgment:

**NARRATIVE STATEMENT OF UNDISPUTED FACTS**

This case involves a wrongful death action arising out of a single-vehicle accident which occurred on March 7, 2004.  (See Pl. Compl. at ¶ 13, Ex. A).  On March 7, 2004, Plaintiff's decedent, Dora Parker Bernard, was operating a 2003 Mitsubishi Montero Sport on U.S. Interstate Highway 65 in Lowndes County when allegedly a "phantom vehicle" passed Ms. Bernard in the emergency lane causing her to lose control of the vehicle. As a result, the Plaintiff's decedent's vehicle went out of control, left the roadway and overturned resulting in the death of Ms. Bernard. (Id. at ¶¶ 17-18, Ex. A).

Approximately two years after the accident, Plaintiff, Trenesa Thomas, as the Administrator for the estate of Dora Parker Bernard, filed a Complaint on or about March 2,

2006, in the Circuit Court of Lowndes County, Alabama. In her Complaint, Plaintiff asserted allegations against Defendants under the Alabama Extended Manufacturers Liability Doctrine (AEMLD) regarding defect allegations pertaining to design, manufacture, marketing, sale and/or distribution, advertising and promotion and failure to warn; negligence and/or wantonness; and allegations under the Wrongful Death Act. (See Pl. Compl. at Count One, Count Two, Count Three and Count Six, attached as Ex. A). Specifically, in Count One, Plaintiff pled that the subject vehicle was defective and unreasonably dangerous regarding "seatbelt malfunction, door latch malfunction, roof structure failure, instability and general uncrashworthiness and other failure modes … ." (Id. at ¶¶ 31-36; see also Pl's Compl. at ¶¶ 47, 52, attached as Ex. A). In Count Two, Plaintiff pled that Defendants "failed to warn or otherwise notify the intended users or consumers of the dangerously defective conditions." (Id. at ¶ 42; see also Pl's Compl. at ¶ 47, attached as Ex. A). Likewise, in Count Three, Plaintiff pled that Defendants "negligently and/or wantonly designed, manufactured, sold, failed to warn and/or failed to provide adequate recalls on the subject 2003 Mitsubishi Montero Sport's vehicle instability, inadequate seatbelt restraint system, inadequate door latch, inadequate roof structure, instability and general crashworthiness…." (Id. at ¶ 52, attached as Ex. A). Clearly, the areas that Plaintiff's allege Defendants were negligent/wanton correspond with the same defect allegations asserted under Plaintiff's AEMLD claims.

On April 5, 2006, Defendants timely filed its Notice of Removal removing the case to the United States District Court for the Middle District of Alabama. On January 16, 2007, Defendants received via email Plaintiff's Rule 26(2)(a)(b) Expert Disclosures ("Plaintiff's Expert Disclosures") which listed the following experts: 1) Kenneth A. Brown (Seatbelt/Restraint

System); 2) Paul Lewis, Jr., M.S. (Kinematics/Biomechanics); and 3) Rudy Limpert, Ph.D.

(Mechanical Engineer/Braking/Reconstruction). (See Pl's Expert Disc. attached hereto as Ex. B).

Specifically, Plaintiff's Expert Disclosures provided:

> 1) "Mr. Brown will testify as to the weaknesses in the design of the restraint system of the 2003 Mitsubishi Montero Sport which is the subject of this litigation.  Mr. Brown will further testify as to alternative design for the 2003 Mitsubishi Montero Sport consistent with his report and deposition testimony not yet taken."
> …
>
> 2) "Mr. Lewis will provide analysis and conclusions relative to the kinematics and biomechanics involved with the death of Dora Bernard consistent with his report and deposition." … and
>
> 3) "Dr. Limpert will testify concerning his analysis and conclusion related to the crash of the 2003 Mitsubishi Montero Sport and braking system.[1]  Dr. Limpert will further testify to a design alternative for the 2003 Mitsubishi Montero Sport and testify consistent with his report and deposition testimony not yet obtained."

(Pl's Expert Disc. at 1-2, Ex. B).

Based on Plaintiff's Expert Disclosures and the expert reports provided with same and attached hereto, Plaintiff did not list any expert witness to address Plaintiff's defect and negligence/wantonness allegations regarding (1) "door latch malfunction"; (2) "roof structure failure"; (3) "instability"; or "inadequate stability"; (4) "general uncrashworthiness and other failure modes"; (5) failure to warn; (6) manufacturing defect; (7) marketing, sale and/or distribution, advertising and promotion.   (See Expert Report of Kenneth Brown, attached as Ex. C; Expert Report[2] of Paul Lewis, Jr., attached as Ex. D; and Expert Report of Rudy Limpert

---

[1]     Plaintiff's Complaint does not include any brake defect allegation and the Defendants refer the Court to its Memorandum Opinion and Order (Doc. #68) issued February 26, 2007, denying Plaintiff's Motion to Amend Complaint to add a brake or braking system defect allegation.  Therefore, any expert testimony or opinion regarding an alleged brake or braking system defect is moot and should not be allowed.
[2]     Defendants redacted any photographs of the Plaintiff's decedent as contained in the expert report submitted by Paul Lewis, Jr.

attached as Ex. E).  To clarify and as the Court[3] is aware, the depositions of these individuals listed in Plaintiff's Expert Disclosures have not taken place based on the current status of the law in the State of Alabama regarding the Licensure Act (Ala. Code § 34-11-1(7)) and the Alabama Supreme Court's broad interpretation of same in <u>Board of Water and Sewer Commissioners of City of Mobile v. James Hunter</u> ("<u>Hunter</u>"), No. 1050067, __ So.2d __, 2006 WL 2089914 (Ala. July 28, 2006).  In the interest of fully complying with the Court's previously entered Rule 16 Uniform Scheduling Order setting the deadline for all dispositive motions, Defendants timely file this Motion for Partial Summary Judgment regarding the issues addressed herein regarding issues that can be addressed by the Court at this time although expert discovery has currently been stayed.  However, Defendants respectfully seek leave from the Court in its separately filed Motion for Leave to Extend the Filing Deadline of Dispositive Motions Concerning Areas Stayed Per the Court's Order (Doc. # 69) with is filed contemporaneously herewith.

## **MEMORANDUM OF LAW**

## I.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the Federal Rules of Civil Procedure.  <u>Celotex Corp. v. Katrett</u>, 477 U.S. 317, 327 (1986).  As the moving party for summary judgment, Defendants bear the initial burden of establishing that there is no genuine issue of any material fact.  <u>Id.</u> at 323; Fed. R. Civ. P. 56(c).  Defendants can meet this initial burden by either (1) submitting affirmative evidence negating an essential element of the non-moving party's claim, or (2) demonstrating that the non-moving party's evidence is in itself insufficient to establish an essential element of the claim advanced.  <u>River v. Great Dane Trailers, Inc.</u>, 816 F. Supp. 1525, 1528 (M.D. Ala. 1993) (<i>citing</i> <u>Celotex</u>, 477 U.S. at

---

[3]    Defendants refer the Court to its previously issued Order (Doc. #69) dated February 26, 2007 staying all expert discovery in the present case.

322); see also, Goree v. Winnebago Industries, Inc. 958 F. 2d 1537, 1539 (11th Cir. 1992) (summary judgment is appropriate against a party who fails to make a sufficient showing to establish the existence of essential elements of claims on which she bears the burden of proof at trial).

After a defendant satisfies this initial burden, the burden shifts to the non-moving party, who must then set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A "genuine" dispute requires more than suspicion or bluster. That is, the non-moving party must establish that a reasonable jury could, on the basis of the proffered proof, return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Avirgan v. Hull, 932 F. 2d 1572, 1577 (11th Cir. 1991). The test to determine if the non-moving party has established a genuine issue for trial is whether it presents evidence for which a jury might return a verdict in his favor. Anderson, 477 U.S. at 257.

Thus, to defeat a motion for summary judgment, the non-moving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the non-moving party. See Dominick v. Dixie National Life Ins. Co., 809 F. 2d 1559 (11th Cir. 1989). A material issue of fact is raised when the alleged facts, if proven, constitute a valid claim or defense. Federal Deposit Ins. Corp. v. Grupo Girod Corp., 869 F. 2d 15, 16 (1st Cir. 1989). A party cannot satisfy this burden by simply relying on mere allegations or denials in pleadings. To the contrary, they must, by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue of material fact. Id. (citing Fed. R. Civ. P. 56(e)). A failure to produce such evidence leaves a trial court with no choice but to grant summary judgment in favor of the moving party.

II.     **PLAINTIFF'S UNSUBTANTIATED DEFECT CLAIMS AGAINST DEFENDANTS ARE DUE TO FAIL AS A MATTER OF LAW AS PLAINTIFF FAILED TO SATISFY HER LEGAL BURDEN**

    A.     **Under Alabama law, expert testimony is required to support Plaintiff's defect allegations involving complex and/or technical areas such as the defect allegations presented in this case.**

In order to maintain an action under the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD"), "the burden of proof rests with the injured consumer to prove that the product left the Defendant's control in an unreasonably dangerous condition not fit for its expected use, and that [the thing] which rendered the product in such an unfit condition in fact caused the injury. The Plaintiff's burden will not be [met] without evidence to support the conclusion that the product is defective." Brooks v. Colonial Chevrolet-Buick, Inc., 579 So. 2d 1328, 1332 (Ala. 1991) (emphasis removed from original).

It is well established that, under Alabama law:

> It is not enough to show that the product failed to perform its intended use and that the plaintiff was injured. The plaintiff must show that the product was unreasonably dangerous when it left the defendant's control, that it was substantially unaltered when the plaintiff used it, and that it proximately caused the plaintiff's injuries. In order to prove the product's defective nature and its nexus with the plaintiff's injuries, 'ordinarily, expert testimony is required because of the complex and technical nature of the commodity'. (Emphasis added).

Caudel v. Partridge, 566 So. 2d 244, 247 (Ala. 1990) (emphasis added) (*citing* Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So. 2d 991, 995 (Ala. 1981)). In Alabama, it is well established that "a defect in the product must be affirmatively shown," and this showing must be made before the analysis even considers whether the product reached the consumer without

substantial change.  Townsend v. General Motors Corporation, 642 So. 2d 411, 415 (Ala. 1994);

Taylor v. General Motors Corporation, 707 So. 2d 198 (Ala. 1997) (holding that plaintiff must

prove by substantial evidence the existence of a defective condition and prove that the defect

proximately caused his injuries); Osmer v. Belshe Industries, Inc., 585 So. 2d 791, 793 (Ala.

1991); Casrell v. Altec Industries, 335 So. 2d 128 (Ala. 1976).  Alabama courts have defined the

term "defective" in a product liability action as follows:

> "Defective" is interpreted to mean that the product does not meet
> the reasonable expectations of an ordinary consumer as to its
> safety.  Comment g. of the Restatement [Second of Torts (1965)]
> says defective condition applies when, at the time the product
> leaves a seller's hands, it is in a condition not contemplated by the
> ultimate consumer.

Jordan v. General Motors Corporation, 581 So. 2d 835, 837 (Ala. 1991).

Thus, "the burden of proof rests with the injured consumer to prove that the product left

the Defendant's control in an unreasonably dangerous condition not fit for its expected use, and

that [the thing] which rendered the product in such an unfit condition in fact caused the injury.

The Plaintiff's burden will not be sustained without evidence to support the conclusion that the

product is defective."  Taylor v. General Motors Corp., 707 So. 2d 198, 202 (Ala. 1997)

(emphasis removed from original); see also Restatement (Second) of Torts, § 402A, cmt. g

(1965).  Despite the existence of this duty, courts must be mindful that the AEMLD does not

make a manufacturer or designer an insurer against all harm that might be caused by the use of

the product; the manufacturer or designer is not obligated to produce an accident-proof or injury-

proof product.  Casrell v. Altec, Ind., 335 So.2d 128 (Ala. 1976); see also Atkins v. American

Motors Corp., 335 So.2d 134 (Ala. 1974); Osmer v. Belshe Industries, Inc., 585 So. 2d 791 (Ala.

1991); Sapp v. Beech Aircraft Corp., 564 So. 2d 418, 419 (Ala. 1990); and Kirk v. Garrett Ford

Tractor, Inc., 650 So. 2d 865, 867 (Ala. 1994) ("Mere proof that an accident and injuries occurred is not enough to establish a prima facie case under the AEMLD."). Indeed, it is well settled that the fact that someone was injured while using a product does not establish the presence of a defect, or, in other words, it does not establish the fact that a product was unreasonably dangerous when put to its intended use. Casrell, supra; Thompson v. Lee, 439 So. 2d 113 (Ala. 1983). See also, Townsend v. General Motors Corp., 642 So. 2d 411 (Ala. 1994) (holding that the manufacturer of a product is not an insurer against all harm that may be caused by the use of the product and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product. Likewise, the failure of a product does not presuppose the existence of a defect. A defect in the product must be affirmatively shown.); Taylor v. General Motors Corp., 707 So. 2d 198 (Ala. 1997) (holding Plaintiff must prove the existence of a defective condition and prove the defect proximately caused his injuries); Allstate Ins. Co. v. Mitsubishi Electronics America, Inc., 709 So. 2d 1306 (Ala. Civ. App. 1998) (stating that the AEMLD is a fault-based cause of action. Without evidence to support the conclusion that the product was defective when it left the hands of the seller, the burden is not sustained. To withstand a properly supported Motion for Summary Judgment, the plaintiff must proffer substantial evidence to indicate that the product was in a defective condition when it left the seller's control.).

As the court held in Allstate Ins. Co. v. Mitsubishi Electronics America, Inc., "[i]t is well settled that '[e]vidence that affords nothing more than a mere speculation, conjecture, or guess is completely insufficient to warrant the submission of a case to the jury.'" Allstate, 709 So. 2d 1306 (Ala. Civ. App. 1998), citing Smoyer v. Birmingham Area Chamber of Commerce, 517 So.

2d 585, 588 (Ala. 1987); See also, Jordan, supra.

In addition, "[i]n order to prove that a product is defective for purposes of the AEMLD, Plaintiff must prove that a safer, practical, alternative design was available to the manufacturer at the time that it was manufactured . . . the existence of a safer, practical, alternative design must be proved by showing that:

> (a)     The Plaintiff's injuries would have been eliminated or in some way reduced by the use of the alternative design**;** and that
>
> (b)     Taking into consideration such factors as the intended use of the [product] its styling, cost, and desirability, its safety aspects, the forseeability of the particular accident, the likelihood of injury, and the probable seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect, the utility of the alternative design outweighed the utility of the design actually used."

Beech v. Outboard Marine Corp., 584 So. 2d 447, 450 (Ala. 1991) (Emphasis added) (*quoting* General Motors Corp. v. Edwards, 482 So. 2d 1179, 1191 (Ala. 1985), *overruled on other grounds*, Schwartz v. Volvo North America Corp., 554 So. 2d 927 (Ala. 1989)); see also Hannah v. Gregg, Bland & Berry, Inc., 840 So. 2d 839, 858 (Ala. 2002).

Here, neither the Plaintiff nor her proffered experts have offered any evidence of a safer, practical, alternative design, regarding the unsubstantiated claims of (1) "door latch malfunction"; (2) "roof structure failure"; (3) "instability" and (4) general uncrashworthiness and other failure modes" which would have "eliminated or in someway reduced" the Plaintiff's injuries. Beech, 584 So.2d at 450.

**B.    Plaintiff's Expert Disclosures and Expert Reports Simply Fail to Provide Any Expert Witness or Expert Testimony to Support Her Defect Allegations of (1) "door latch malfunction"; (2) "roof structure failure"; (3) "instability" and (4) "general uncrashworthiness and other failure modes"**

In the present case, all three (3) individuals listed in Plaintiff's Expert Disclosures have issued their expert report in this case. (See Report of Kenneth Brown, Ex. C; Report of Paul Lewis Jr., Ex. D; and Report of Rudy Limpert, Ex. E).  As provided in Fed. R. Civ. P. 26(2)(B), "[t]he [expert] report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; …." Fed. R. Civ. P. 26(2)(B) (emphasis added).  Furthermore, Fed. R. Civ. P. 26 Advisory Committee Notes (1993 Amendment) state:

> Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefore.
>
> …
>
> Nevertheless, the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness."

(Fed. R. Civ. P. 26 Advisory Committee Notes (1993 Amendment) (emphasis added).

Although Mr. Brown, Mr. Lewis and Dr. Limpert have yet to be deposed in this case, these individuals have issued their expert reports which based on the stringent requirements of Fed. R. Civ. P. 26 and Advisory Committee Notes "shall contain a complete statement of all opinions to be expressed" and include the "substance of the direct examination."   Therefore, based on the expert reports these individuals have provided pursuant to Fed. R. Civ. P. 26(a)(2),

all parties and the Court are aware of the subject areas and opinions that these individuals will be proffering as expert testimony and opinions. Therefore, the issues presented in Defendants' Motion for Partial Summary Judgment and as presented in this memorandum of law regarding the same can be addressed by the Court at this time without delay regarding depositions of these individuals or the current stay on expert discovery.

As such and based on Plaintiff's Expert Disclosures and the expert reports issued by Mr. Brown, Mr. Lewis and Dr. Limpert in the present case, the Plaintiff simply cannot meet her burden of proof regarding: (1) "door latch malfunction"; (2) "roof structure failure"; (3) vehicle "instability" or "inadequate stability"; and (4) "general uncrashworthiness and other failure modes" because Plaintiff failed to disclose any experts to address these areas and none of the Plaintiff's expert reports sufficiently address the same. (See Exs. C, D, and E). Furthermore, none of the individuals proffered by Plaintiff as expert witnesses in this case have offered alternative designs regarding these same subject areas. Therefore, Defendants are entitled to judgment as a matter of law regarding these defect allegations affirmatively pled in Plaintiff's Complaint.

          1.    **Plaintiff failed to disclose any expert regarding her defect allegation of "door latch malfunction" or "inadequate door latches" as pled in Plaintiff's Complaint or provide any expert report regarding the same.**

In Plaintiff's Complaint, Plaintiff alleged that "[t]he 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design in that the vehicle had inadequate door latches that would not remain intact and closed under the foreseeable forces which occur on rollover or other type collisions." (Pl. Compl. ¶ 31, Ex. A; see also Pl's Compl. ¶¶ 36, 47, 52, attached as Ex. A). However, Plaintiff failed to designate any individual to address the issue of automotive

doors, door latches, failure of doors and/or door latches.  (See Pl's Expert Disclosures, Ex. B).
On January 16, 2007, Plaintiff filed Plaintiff's Motion for Leave of Court to File Additional
Plaintiff's Expert Disclosures Relating to Doors, Door Latches and Door Release Mechanisms
(Plaintiff's Motion) (Doc. #54).  On February 26, 2007, this Honorable Court entered an Order
(Doc. #68) denying Plaintiff's Motion.

Although each of the experts retained by Plaintiff casually mention or allege in their
report that the driver's door on the subject vehicle opened and closed during the rollover event
(which is highly contested by the Defendants), none of the experts specifically address the area
of automotive doors or door latches nor have any of them been disclosed to do so.  Simply stated,
Plaintiff failed to provide any expert report that specifically addresses automotive doors, door
latches and/or the failure of the same as. (See Pl's Experts Reports attached as C, D, and E).
Because Plaintiff has failed to disclose any expert report regarding automotive doors, door
latches or the failure of the same and Plaintiff has failed to designate any expert to address this
issue, Defendants are entitled to judgment as a matter of law regarding Plaintiff's defect
allegation of "door latch malfunction" or "inadequate door latches".

Based on the foregoing case law, it is clear that the existence of a defect is the
cornerstone to any product liability action.  See Caudel v. Partridge, 566 So. 2d 244, 247 (Ala.
1990) ("In order to prove the product's defective nature and its nexus with the plaintiff's injuries,
'ordinarily, expert testimony is required because of the complex and technical nature of the
commodity'".) (citing Sears, Roebuck & Co. v. Havenhills Farm, Inc., 395 So. 2d 991, 995 (Ala.
1981)).  It is very important to acknowledge that, under Alabama law, it is the plaintiffs who
must prove by substantial evidence that the subject vehicle was in a defective condition at the

time it left the manufacturer's control, that it was unaltered and that the defect was the proximate cause of their alleged injuries. However, Plaintiff's claims regarding automotive doors, door latches and/or alleged failure of the same against Defendants are due to be dismissed as they are unable to produce any evidence, other than mere speculation and conjecture, that the numerous components of the subject 2003 Mitsubishi Montero Sport driver's side door or door latch were in any way defective. Furthermore and as required on the part of the plaintiff under the AEMLD, Plaintiff has failed to offer any reasonable alternative design regarding automotive doors or door latches that she alleges would have prevented the Plaintiff's decedent's death. See Beech v. Outboard Marine Corp., 584 So. 2d 447, 450 (Ala. 1991) (quoting General Motors Corp. v. Edwards, 482 So. 2d 1179, 1191 (Ala. 1985), overruled on other grounds, Schwartz v. Volvo North America Corp., 554 So. 2d 927 (Ala. 1989)); see also Hannah v. Gregg, Bland & Berry, Inc., 840 So. 2d 839, 858 (Ala. 2002).

Because Plaintiff cannot provide any evidence whatsoever that the subject vehicle was defective regarding doors or door latches nor has Plaintiff offered any reasonable alternative design – a burden required of the Plaintiff under the AEMLD – her claims regarding doors and door latches are due to be dismissed as a matter of law.

**2. Plaintiff failed to disclose any expert regarding her defect allegation of "roof structure failure" as pled in Plaintiff's Complaint or provide any expert report regarding the same.**

In Plaintiff's Complaint, Plaintiff alleged that: "[t]he 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design in that the vehicle had an inadequate roof structure and B-pillar that did not remain intact under the foreseeable forces which occur on rollover or other type of collision. B-pillar movement allowed the belt system to introduce the

slack." (Pl. Compl. ¶ 33, Ex. A; see also ¶¶ 36, 47, 52, attached as Ex. A). However, Plaintiff failed to designate any individual to address the issue of "roof structure failure" or "inadequate roof structure or B-pillar". (See Pl's Expert Disclosures, Ex. B).

Likewise, none of the expert reports provided by Plaintiff's experts in this case address roof strength as a defect under AEMLD. (See Exs. C, D, and E). In addition and in direct contrast to any evidence supporting an allegation of roof crush or "roof structure failure", Mr. Lewis, who was designated by Plaintiff to address kinematics/biomechanics, stated in his report that "[m]y surrogate study clearly showed that had Dora Parker [Bernard] simply been contained in the vehicle that she would had adequate occupant survival space." (Expert Report of Paul Lewis at 33, ¶ 6(a), attached as Ex. D). Furthermore, Mr. Lewis in his report also relies upon his photographs of a surrogate in the subject vehicle with approximately five (5) inches between the top of the surrogate's head and the inner lining of the roof of the subject vehicle. (Id. at 19, 34, and 35 ¶ 6(f), attached as Ex. D). As such, clearly any allegation of "roof structure failure" or "inadequate roof structure or B-pillar" should fail.

Simply stated, Plaintiff failed to provide any expert report that specifically addresses roof strength, "roof structure failure" or "inadequate roof structure or B-pillar". (See Pl's Experts Reports attached as Exs. C, D, and E). Because Plaintiff failed to disclose any expert report regarding these areas and Plaintiff failed to designate any expert to address the same, Defendants are entitled to judgment as a matter of law regarding Plaintiff's defect allegation of "roof structure failure" or "inadequate roof structure or B-pillar" based on the aforementioned cases regarding expert testimony being required in AEMLD claims of a complex or technical nature. See Caudel v. Partridge, 566 So. 2d 244, 247 (Ala. 1990) ("In order to prove the product's

defective nature and its nexus with the plaintiff's injuries, 'ordinarily, expert testimony is required because of the complex and technical nature of the commodity'".) (*citing* Sears, Roebuck & Co. v. Havenhills Farm, Inc., 395 So. 2d 991, 995 (Ala. 1981)).  Furthermore and as required on the part of the plaintiff under the AEMLD, Plaintiff has failed to offer any reasonable alternative design regarding roof structure, roof strength or B-pillar that Plaintiff states would have prevented the Plaintiff's decedent's death. See Beech v. Outboard Marine Corp., 584 So. 2d 447, 450 (Ala. 1991) (*quoting* General Motors Corp. v. Edwards, 482 So. 2d 1179, 1191 (Ala. 1985), *overruled on other grounds*, Schwartz v. Volvo North America Corp., 554 So. 2d 927 (Ala. 1989)); see also Hannah v. Gregg, Bland & Berry, Inc., 840 So. 2d 839, 858 (Ala. 2002).

Because Plaintiff failed to offer any expert report or testimony that the subject vehicle was defective regarding roof strength when it left the control of the Defendants and that such alleged defect was the proximate cause of their alleged injuries – a burden required of the Plaintiffs under the AEMLD – her claims against the Defendants regarding roof strength are due to be dismissed as a matter of law.

### 3.    Plaintiff failed to disclose any expert regarding her defect allegation of vehicle "instability" or "substantial propensity for rolling over" as pled in Plaintiff's Complaint or provide any expert report regarding the same.

In Plaintiff's Complaint, Plaintiff alleged that: "the 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective and the defects existing therein subjected Dora Bernard to an unreasonable risk of harm in that the vehicle, as designed, had a substantial propensity for rolling over under the foreseeable driving conditions and collisions." (Pl. Compl. ¶ 34, Ex. A). Plaintiff also alleges that "[t]he subject 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design in that the vehicle had inadequate stability which would allow

the vehicle to roll over under a similar type collision or under foreseeable accident conditions." (Pl's Compl. at ¶ 35; see also ¶¶ 36, 47, 52, attached as Ex. A).  However, Plaintiff failed to designate any individual to address the issue of the vehicle-stability characteristics of the 2003 Mitsubishi Montero Sport.  (See Pl's Expert Disclosures, Ex. B).

Likewise, none of the expert reports provided by Plaintiff's experts in this case address the rollover resistance characteristics of the subject vehicle or as termed by the Plaintiff, issues of "substantial propensity to roll over", "instability" or "inadequate stability".  (See Plaintiff's Expert Reports, attached as Exs. C, D, E).  In fact, Dr. Limpert, who Plaintiff has designated in the areas of "mechanical engineer/braking system/reconstruction", provided in his report criticism of the 2003 Mitsubishi Montero Sport regarding the braking system used in the vehicle but did not proffer any other criticisms, such as criticisms regarding rollover resistance or stability characteristics of the 2003 Mitsubishi Montero Sport.  (See Expert Report of Rudy Limpert at 2-3, attached as Ex. E).  Furthermore, the only so-called feasible alternative design offered by Dr. Limpert specifically dealt with his criticisms of the braking system and did not involve stability or rollover resistance.  (See Expert Report of Rudy Limpert at 3, attached as Ex. E).  As this Court is well aware, Plaintiff's Complaint does not include any allegation of defect regarding the braking system of the subject 2003 Mitsubishi Montero Sport, and this Honorable Court denied Plaintiff's Motion to Amend Complaint to add a braking system defect allegation. (See Memo. Op. and Order, Doc. # 68).  Therefore, not only is Dr. Limpert's opinion regarding the braking system in the subject 2003 Mitsubishi Montero Sport irrelevant, his opinion regarding braking systems does not piggy-back into an allegation regarding the rollover resistance of the subject vehicle.  As such, Plaintiff failed to provide any expert report that

specifically addresses the stability characteristics of the 2003 Mitsubishi Montero Sport. (See Pl's Experts Reports attached as C, D, and E). Likewise, Plaintiff, through her experts or otherwise, failed to offer any alternative design regarding the stability or rollover resistance of the 2003 Mitsubishi Montero Sport.

Because Plaintiff failed to disclose any expert report regarding this area and Plaintiff failed to designate any expert to address the same, Defendants are entitled to judgment as a matter of law regarding Plaintiff's defect allegation of "substantial propensity to roll over", "instability" or "inadequate stability". See Caudel v. Partridge, 566 So. 2d 244, 247 (Ala. 1990) ("In order to prove the product's defective nature and its nexus with the plaintiff's injuries, 'ordinarily, expert testimony is required because of the complex and technical nature of the commodity'".) (citing Sears, Roebuck & Co. v. Havenhills Farm, Inc., 395 So. 2d 991, 995 (Ala. 1981)). Because Plaintiff has failed to provide and cannot provide any evidence whatsoever that the subject vehicle was defective regarding resistance to rollover and that such alleged defect was the proximate cause of their alleged injuries – a burden required of the Plaintiffs under the AEMLD – her claims against the Defendants regarding vehicle stability are due to be dismissed as a matter of law.

**4.    Plaintiff failed to disclose any expert regarding her defect allegation of "general crashworthiness and other failure modes" as pled in Plaintiff's Complaint or provide any expert report regarding the same.**

In Plaintiff's Complaint, Plaintiff alleged that: "… [the] general uncrashworthiness and other failure modes subjected Dora Bernard to an unreasonable risk of harm under the foreseeable forces and circumstances which occur during a similar type collision." (Pl. Compl. ¶ 36, Ex. A; see also Pl's Compl. at ¶ 47, 52, attached as Ex. A). However, Plaintiff failed to

-17-

describe what defect allegations fall within "general crashworthiness and other failure modes" and have also failed to designate any individual to address these issues. (See Pl's Expert Disclosures, Ex. B). To the extent that "general crashworthiness and other failure modes" is considered at issue in this case and similar with arguments supra at II., none of the expert reports provided by Plaintiff's experts in this case address "general crashworthiness or other failure modes." (See Plaintiff's Expert Reports, attached as Exs. C, D, E). Because Plaintiff failed to disclose any expert report regarding this area and Plaintiff failed to designate any expert to address the same, Defendants are entitled to judgment as a matter of law regarding Plaintiff's defect allegation of "general crashworthiness and other failure modes". See Caudel v. Partridge, 566 So. 2d 244, 247 (Ala. 1990) ("In order to prove the product's defective nature and its nexus with the plaintiff's injuries, 'ordinarily, expert testimony is required because of the complex and technical nature of the commodity'".) (citing Sears, Roebuck & Co. v. Havenhills Farm, Inc., 395 So. 2d 991, 995 (Ala. 1981)). Consistent with the aforementioned legal argument, Plaintiff has also failed to satisfy her burden to offer a reasonable alternative design regarding "general crashworthiness and other failure modes". Therefore, Defendants are entitled to judgment as a matter of law regarding this defect allegation.

   **C.    Plaintiff's Failure to Warn Claim Fails As a Matter of Law Because No Expert Has Been Disclosed to Address Same Nor Has Any Expert Report Been Provided to Support Such Allegation**

   **1)    Plaintiff failed to disclose any expert to address warnings.**

In Count Two of Plaintiff's Complaint, Plaintiff alleged that "Defendants failed to warn or otherwise notify the intended users or consumers of the dangerously defective conditions."

(Pl's Compl. at ¶ 42, Ex. A).  In Count Three of her Complaint, Plaintiff alleged that Defendants "negligently and/or wantonly … failed to warn and/or failed to provide adequate recalls on the subject 2003 Mitsubishi Montero Sport …." (Pl's Compl. ¶ 52, Ex. A).  Consistent with arguments above (supra at II.) regarding AEMLD and negligence claims regarding alleged defects, Plaintiff failed to disclose any expert to address warnings, alleged lack of warnings, alternative warnings, location or display of warnings and/or human factors.

Because Plaintiff's failure to warn claim mirrors her defect allegations under AEMLD, or as more simply stated, because Plaintiff's failure to warn Count is titled as falling within AEMLD, Plaintiff's failure to provide expert disclosures and reports addressing such shows that she has failed to meet her burden and cannot do so.  See Caudel v. Partridge, 566 So. 2d 244, 247 (Ala. 1990) ("In order to prove the product's defective nature and its nexus with the plaintiff's injuries, 'ordinarily, expert testimony is required because of the complex and technical nature of the commodity'".) (citing Sears, Roebuck & Co. v. Havenhills Farm, Inc., 395 So. 2d 991, 995 (Ala. 1981).  Furthermore, Plaintiff's claims regarding failure to warn should also fail because Plaintiff failed to provide any alternative warning that would have prevented the Plaintiff's decedent's death as required under Alabama law. See Beech v. Outboard Marine Corp., 584 So. 2d 447, 450 (Ala. 1991) (quoting General Motors Corp. v. Edwards, 482 So. 2d 1179, 1191 (Ala. 1985), overruled on other grounds, Schwartz v. Volvo North America Corp., 554 So. 2d 927 (Ala. 1989)); see also Hannah v. Gregg, Bland & Berry, Inc., 840 So. 2d 839, 858 (Ala. 2002).

### 2.    No post-sale duty to warn under Alabama law.

To the extent that Plaintiff's failure to warn extends to a post-manufacture or post-sale duty to warn, retrofit and/or recall, Defendants provide that to undersigned counsel's knowledge,

no Alabama case exists adopting such a duty.  Alabama does not recognize a post-sale or post-manufacturer duty to retrofit and/or recall a product.   Moreover, <u>other jurisdictions with similar product liability laws have determined that no such duty exists</u>.

In <u>Anderson v. Nissan Motor Co., LTD</u>, 139 F. 3d 599 (8th Cir. 1998), the plaintiff brought suit against a forklift manufacturer asserting theories of negligence and strict liability after he sustained serious injuries when a forklift overturned during operation and the plaintiff he was crushed by the overhead guard structure.  Plaintiff contended, in part, that the manufacturer had a post sale duty to retrofit the product with operator restraints. <u>Anderson</u>, 139 F. 3d at 600.  Recognizing that the Nebraska Supreme Court had not specifically addressed the issue of whether it would recognize a duty to retrofit on the part of the manufacturer, the Eighth Circuit Court of Appeals held that a manufacture does not have a post sale duty to retrofit its products.  In reaching its conclusion, the Court relied on Nebraska's substantive products liability law which places the burden on the plaintiff to prove that the alleged defect existed <u>at the time the product left the hands of the manufacturer</u>. *Id*. at 602 (Emphasis added); relying on <u>Rahmig v. Mosely Mach. Co.</u>, 226 Neb. 423, 412 N.W. 2d 56 (1987).  Because the question of whether a product is defective is to be determined <u>at the time a product leaves the control of a manufacturer</u>, the Court reasoned there could be no such duty on a manufacture to retrofit a product after it left the manufacturer's control. <u>Id</u>. at 602. (Emphasis added.)

Alabama products liability law is similarly based on the premise that the question of whether a product is defective arises at the time the product left the defendant's control. In order to establish liability under the Alabama Extended Manufacturer's Liability Doctrine, a plaintiff is required to show that a product was defective and unreasonably dangerous at the time it left the

hands of the defendant. Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala. 1976) (Emphasis

added).  In light of the Eighth Circuit Court of Appeals' well reasoned decision in Anderson,

supra, it would follow that Deere & Company neither had nor has a duty to retrofit the subject

skidder with operator cab doors after it left this Defendant's hands in 1978, as argued by the

Plaintiff in the instant case.

Courts in other jurisdictions have likewise reached similar conclusions.  See McDaniel v.

Bieffe USA, Inc., 35 F.Supp.2d 735 (D. Minn. 1999); Tabieros v. Clark Equip. Co., 944 P.2d

1279, 1298-1300 (Haw. 1997) (citing cases and stating that "virtually every court that has

confronted the issue head-on" has rejected this duty); Burke v. Deere & Co., 6 F.3d 497, 508 n.

16 (8th Cir. 1993) (restating that no such duty exists under Iowa law) cert. denied, 510 U.S.

1115, 114 S.Ct. 1063, L. Ed. 2d. 383 (1994); Wallace v. Dorsey Trailers Southeast, Inc., 849

F.2d 341, 344 (8th Cir. 1998) (affirming district court's conclusion that Missouri does not

recognize a duty to retrofit); Gregory v. Cincinnati Inc., 450 Mich. 1, 538  N.W. 2d 325, 333

(Mich. 1995) (holding there is no continuing duty to repair or recall); Modelski v. Navistar

International, 707 N.E. 2d 239 (Ill. App. 4th 1999) ("The consequences of imposing upon

manufacturers an extrastatutory duty to recall and retrofit used products to incorporate post-sale

state of the art designs would be the equivalent of mandating that manufacturers insure that their

products will always comply with current safety standards.  This we are unwilling to do.  If such

a continuing duty is to be imposed, it is the legislature that is better suited to the task.")

(Emphasis added); Restatement (Third) of Torts: Product Liability § 11, Comment a (1997)

("Duties to recall products impose significant burdens on manufacturers...If every improvement

in product safety were to trigger a common-law duty to recall, manufacturers would face

incalculable costs every time they sought to make their product lines better and safer.")
(Emphasis added).

Post-sale conduct is not actionable under Alabama law and is furthermore legally
irrelevant to Plaintiff's claim arising under the AEMLD. As such, Defendants are entitled to
judgment as a matter of law regarding Plaintiff's failure to warn allegations.

      **D.**     **Plaintiff's Claims Regarding Manufacturing, Marketing, Sale and/or Distribution, Advertising and Promotion Claims Also Fail As a Matter of Law Because Plaintiff Failed to Disclose Any Expert in These Areas or Provide Expert Reports**

Consistent with the legal arguments provided <u>supra</u>, Plaintiff's claims regarding
marketing, advertising and promotion fail because Plaintiff failed to disclose any experts to
address these areas or provide any expert reports discussing the same. In Plaintiff's Complaint at
Count One (AEMLD), Plaintiff alleged that "[t]he subject 2003 Mitsubishi Montero Sport was
defective in one or more of the following ways: … ii. manufacture [sic]; iii. marketing; iv. sale
and/or distribution; v. advertising and promotion; …." (Pl's Compl. at ¶ 36, Ex. A). Likewise,
none of Plaintiff's experts disclosed in this case addressed any of these subject areas.
Furthermore, there has not been any evidence whatsoever that Plaintiff's decedent relied upon
any marketing, advertising and/or promotion of the Defendants in purchasing the subject vehicle.
Therefore, based on the legal argument as laid out <u>supra</u> at II and incorporated herein by
reference, Defendant is entitled as a matter of law to Plaintiff's claims regarding defect or
negligence pertaining to manufacture; marketing; sale and/or distribution; and advertising and
promotion.

## <u>CONCLUSION</u>

For the above reasons, Defendants Mitsubishi Motors North America, Inc. and Takata Corporation, respectfully request that this Court grant its Motion for Partial Summary Judgment as there is no genuine issue of any material fact and Defendants are entitled to judgment as a matter of law with respect to Plaintiff's defect and negligence allegations of Plaintiff's Count One, Count Two, and Count Three concerning: (1) automotive doors and door latches; (2) roof structure and roof strength; (3) vehicle stability and rollover resistance; (4) general crashworthiness; (5) failure to warn; (6) manufacturing defect; (7) marketing, sale and/or distribution, advertising and promotion.

Respectfully submitted this 1st day of March, 2007.

> **/s/ J. Brannon Maner**
> D. Alan Thomas (ASB-8351-T77D)
> Gregory L. Schuck (ASB-6885-C62G)
> J. Brannon Maner (ASB-4616-S71M)
> Attorneys for Defendants,
> Mitsubishi Motors North America, Inc. and
> Takata Corporation

**OF COUNSEL:**
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223-2484
Telephone:  (205) 251-1193
Telecopier: (205) 251-1256

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of to all attorneys of record.

**<u>All Attorneys of Record:</u>**

Michael G. Strickland, Esq.
mgs@jurytrial.us
Blaine C. Stevens, Esq.
bcelone@aol.com
Attorneys for Plaintiff
STRICKLAND & KENDALL, L.L.C.
420 South Lawrence Street
P.O. Box 99
Montgomery, Alabama 36101-0099

**/s/ J. Brannon Maner**
Of Counsel