IN THE CIRCUIT COURT OF
LOWNDES COUNTY, ALABAMA

TRENESA THOMAS as the Administrator )
for the estate of DORA PARKER )
BERNARD, now deceased, )
　　　　 )
　　　　 )
　　Plaintiff, )
　　　　 )
　　　　 )
v. )
　　　　 )　　CASE NO.: CV-06- 23
MITSUBISHI MOTOR NORTH )
AMERICA, INC.; MITSUBISHI )　　JURY TRIAL REQUESTED
CORPORATION; DAIMLER )
CHRYSLER CORPORATION; )
TAKATA CORPORATION; TAKATA )
NORTH AMERICAN, INC.; TAKATA, )
INC.; TAKATA RESTRAINT SYSTEMS, )
INC.; TAKATA SEAT BELTS, INC.; )
DON JACKSON IMPORT CARS, INC.; )
FICTITIOUS DEFENDANTS "No. 1" )
and "No. 2," whether singular or plural, that )
person, corporation, or other legal entity )
who or which designed, manufactured, )
advertised, sold, or otherwise placed into the )
stream of commerce the 2003 Mitsubishi )
Montero Sport which is the subject matter )
of this lawsuit; )
FICTITIOUS DEFENDANTS " No. 3" )
and "No. 4," whether singular or plural, that )
person, corporation, or other legal entity )
who or which designed, manufactured, )
engineered, sold, or otherwise place into the )
stream of commerce the component parts of )
the 2003 Mitsubishi Montero Sport which is )
the subject matter of this lawsuit; )
FICTITIOUS DEFENDANTS" No. 5" )
and "No. 6," whether singular or plural, that )
person, corporation, or other legal entity )
whose negligence, wantonness, or other )



wrongful conduct, combined and concurred )
with the conduct of Defendants herein, to )
cause the death of DORA BERNARD; )
FICTITIOUS DEFENDANTS " No. 7" )
and "No. 8," whether singular or plural, that )
person, corporation, or other legal entity )
who is the domestic automobile dealership, )
firm, or corporation that furnished, sold, or )
supplied the vehicle which Plaintiff )
occupied on the occasion made the basis )
of this lawsuit; )
FICTITIOUS DEFENDANT S" No. 9" )
and "No. 10," whether singular or plural, )
that person, corporation, or other legal )
entity other than those entities described )
above, which is the successor in interest of )
any of the entities described above; )
FICTITIOUS DEFENDANTS " No. 11" )
and "No. 12," whether singular or plural, )
that person, corporation, or other legal )
entity other than those entities described )
above, which was the predecessor )
corporation of any of the entities described )
above; )
FICTITIOUS DEFENDANTS " No. 13" )
and "No. 14," whether singular or plural, )
that person, corporation, or other legal )
entity other than those entities described )
above, whose breach of contract or warranty )
contributed to cause the occurrence made )
the basis of this lawsuit; )
FICTITIOUS DEFENDANTS " No. 15" )
and "No. 16," whether singular or plural, )
that person, corporation, or other legal )
entity who or which provided any insurance )
coverage, of whatever kind or character, to )
any of the named or Fictitious Defendants )
herein; )
FICTITIOUS DEFENDANT S" No. 17" )
and "No. 18," whether singular or plural, )

2

that person, corporation, or other legal )
entity who or which were the master or )
principal of the "PHANTOM" Defendant )
driver of the motor vehicle at the time of )
the accident; )
FICTITIOUS DEFENDANTS " No. 19" )
and "No. 20," whether singular or plural, )
that person, corporation, or other legal )
entity who or which negligently and/or )
wantonly entrusted the motor vehicle which )
collided with and/or forced off the roadway )
Dora Bernard's motor vehicle on the )
occasion of the occurrence made the basis of )
this lawsuit; )
FICTITIOUS DEFENDANTS " No. 21" )
and "No. 22," whether singular or plural, )
that person, corporation, or other legal )
entity who or which was responsible for the )
injuries and damages suffered by the Plaintiff )
on the occasion of the occurrence made the )
basis of this lawsuit; )
FICTITIOUS DEFENDANTS " No. 23," )
"No. 24," "No. 25," "No. 26," "No. 27," )
whether singular or plural, that individual, )
or those individuals, other than those )
individuals and entities described above )
whose negligence, wantonness, or other )
wrongful conduct caused or contributed to )
cause the occurrence made the basis of )
this lawsuit; )
Plaintiffs aver that the identities of the )
Fictitious party defendants described )
herein are otherwise unknown to Plaintiff )
at this time or, if their names are known )
to Plaintiff, their identities as proper )
parties are not known to Plaintiff and their )
true and correct names will be substituted )
by amendment when ascertained, )
)
    *Defendants.* )

3

## COMPLAINT

### STATEMENT OF THE PARTIES

1.    Plaintiff Trenesa Thomas is over the age of nineteen (19) years and is the duly appointed Administrator of the Estate of Dora Bernard who was a resident of the State of Georgia at the time of her death.

2.    Defendant Mitsubishi Motor North America, Inc. (hereinafter may be referred to as "Mitsubishi America" and/or "Defendant") is a corporation with its principal place of business located in California and at all material times was doing business by agent in the State of Alabama.

3.    Defendant Mitsubishi Corporation (hereinafter may be referred to as "Mitsubishi Corp." and/or "Defendant") is a foreign corporation organized and existing under the laws of Japan and doing business in the State of Alabama.

4.    Defendant Daimler Chrysler Corporation(hereinafter may be referred to as "Daimler" and/or "Defendant") is a corporation with its principal place of business located in Delaware and at all material times was doing business by agent in the State of Alabama.

5.    Defendant Takata Corporation (hereinafter may be referred to as "Takata" and/or "Defendant") is a foreign corporation organized and existing under the laws of Japan and doing business in the State of Alabama.

6.    Defendant Takata North American, Inc. (hereinafter may be referred to as "Takata America" and/or "Defendant") is a corporation with its principal place of business

4

located in Delaware and at all material times was doing business by agent in the State of Alabama.

7.     Defendant Takata, Inc. (hereinafter may be referred to as "Takata Inc." and/or "Defendant") is a corporation with its principal place of business located in Delaware and at all material times was doing business by agent in the State of Alabama.

8.     Defendant Takata Restraint Systems, Inc. (hereinafter may be referred to as "Takata Restraint" and/or "Defendant") is a corporation with its principal place of business located in Delaware and at all material times was doing business by agent in the State of Alabama.

9.     Defendant Takata Seat Belts, Inc. (hereinafter may be referred to as "Takata Seat Belts" and/or "Defendant") is a corporation with its principal place of business located in Delaware and at all material times was doing business by agent in the State of Alabama.

10.    Defendant Don Jackson Import Cars, Inc. (hereinafter may be referred to as "Jackson" and/or "Defendant"), and at all material times was doing business by agent in the State of Alabama. For further evidence of Don Jackson Import Cars, Inc. doing business in Alabama, see email attached hereto as Exhibit "1".[1]

---

[1] On March 23, 2004 at approximately 10:06 p.m., attorney Strickland contacted the internet sales department at Don Jackson Mitsubishi via Don Jackson's website and inquired about purchasing a 2003 Mitsubishi Montero automobile through attorney Strickland's home computer and email address. (The home telephone number of attorney Strickland has been redacted as it is a private unlisted telephone number.) On March 24, 2004 at approximately 7:44a.m., Internet Sales sent an email to the Strickland home computer concerning a potential automobile purchase and how the vehicle may be delivered to the state of Alabama. On March 29, 2004, Don Jackson Mitsubishi sales office, specifically Joel Hardy, advised that Dona Jackson ships cars all over the county and that it again would be able to deliver an automobile to the state of Alabama.

11.     Fictitious Defendants "1", "2," "3," "4," "5," "6," "7," "8," "9," "10," "11," "12," "13," "14," "15," "16," "17," "18," "19," "20," "21," "22," "23," "24," "25," "26," and "27" are those persons, corporations, or other legal entities described more fully in the caption and incorporated herein, whose negligence, wantonness, willfulness, or other wrongful conduct, caused or contributed to cause the death of Dora Bernard, whose true and correct names are unknown to Plaintiff at this time but will be substituted by amendment when ascertained.

12.     The term "Defendants" is made to refer to all real and fictitious Defendants described in the style of this Complaint.

## STATEMENT OF THE FACTS

13.     On March 7, 2004, the deceased, Dora Bernard, was traveling southbound on U.S. Interstate Highway 65 in Lowndes County, Alabama.

14.     The deceased, Dora Bernard, was operating her 2003 Mitsubishi Montero Sport, VIN: JA4LS21H43J001667.

15.     The subject 2003 Mitsubishi Montero Sport was designed, engineered, manufactured, and marketed by Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Jackson, and Fictitious Defendants.

16.     At all material times, Dora Bernard was using the occupant restraint system in the 2003 Mitsubishi Montero Sport as it was intended to be used.

17.     At the same time and general location, it is believed that a "phantom vehicle" passed Dora Bernard in the emergency lane contacting her or forcing her out of her lane of

6

travel. As a result, the 2003 Mitsubishi Montero Sport became unstable and caused a loss of control.

18.    The deceased's vehicle went out of control, left the roadway, and overturned.

19.    During the accident sequence, the door and/or door latch were caused to open creating a portal through which Dora Bernard was allowed to interact with the outside environment while she was still seatbelted.

20.    As a direct and proximate result of the subject 2003 Mitsubishi Montero Sport's door/door latch failure, seatbelt failure, instability and general uncrashworthiness, Dora Bernard was ejected from the vehicle while still wearing the seatbelt. During the roll sequence, Dora Bernard's body was severed completely in half by the driver's door and seatbelt restraint system. The failures of the restraint system, door, door latch, instability, general uncrashworthiness combined with the other failure modes, caused her death.

21.    At the time of the incident, the 2003 Mitsubishi Montero Sport was being used and operated as intended and in a manner reasonably foreseeable to the Defendants.

22.    At the time of the incident, the 2003 Mitsubishi Montero Sport was in the same or substantially similar condition at the time of the rollover collision as it was at the time the Defendants placed the vehicle into the stream of commerce.

23.    The events that took place during this accident and the failure modes of the subject vehicle's, door latch failures, failures of the restraint systems, instability and the general uncrashworthiness of the subject vehicle were foreseeable to the Defendants and previously known to the Defendants.

7

24.     The subject 2003 Mitsubishi Montero Sport vehicle was defective in its design and manufacture, and was unreasonably dangerous at the time it was released into the stream of commerce by the Defendants.

25.     As a result of the 2003 Mitsubishi Montero Sport's defective condition and the actions of the other named Defendants and Fictitious Defendants, Dora Bernard was killed.

**COUNT ONE**
(Alabama Extended Manufacturers Liability Doctrine [AEMLD])

26.     Plaintiff realleges and incorporates all prior paragraphs of the Complaint as if set out here in full.

27.     Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants designed, engineered, tested, manufactured, distributed, and marketed the 2003 Mitsubishi Montero Sport which is the subject matter of this lawsuit.

28.     Said Defendants reasonably expected that the 2003 Mitsubishi Montero Sport would reach the ultimate user or consumer in the condition it was in at the time of the collision.

29.     At the time of the collision, the 2003 Mitsubishi Montero Sport was in substantially the same mechanical and design condition as it was on the date of its manufacture and sale.

30.     The collision events and the collision mode were reasonably foreseeable and known to the Defendants and Fictitious Defendants.

8

31.    The 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design in that the vehicle had inadequate door latches that would not remain intact and closed under the foreseeable forces which occur on rollover or other types of collisions.

32.    The 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design and/or manufacture in that the vehicle's restraint system allowed slack to be introduced into the safety belt allowing excess body excursion under the foreseeable forces which occur on rollover or other types of collisions.

33.    The 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design in that the vehicle had an inadequate roof structure and B-pillar that did not remain intact under the foreseeable forces which occur on rollover or other type of collision.  B-pillar movement allowed the belt system to introduce the slack.

34.    At the time of the subject collision, the 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective and the defects existing therein subjected Dora Bernard to an unreasonable risk of harm in that the vehicle, as designed, had a substantial propensity for rolling over under foreseeable driving conditions and collisions.

35.    The subject 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design in that the vehicle had inadequate stability which would allow the vehicle to roll over under a similar type collision or under foreseeable accident conditions.

36.    The subject 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design and/or manufacture in that the vehicle had inadequate seatbelts and door

9

latches which could malfunction under a similar type collision or under foreseeable accident conditions. The foreseeable seatbelt malfunction, door latch malfunction, roof structure failure, instability and general uncrashworthiness and other failure modes subjected Dora Bernard to an unreasonable risk of harm under the foreseeable forces and circumstances which occur during a similar type collision. The subject 2003 Mitsubishi Montero Sport was defective in one or more of the following ways:

    i.     Design;

    ii.    Manufacturer;

    iii.   Marketing;

    iv.   Sale and/or distribution;

    v.    Advertising and promotion; and

    vi.   Failing to warn.

37.    Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants, for valuable consideration, designed, manufactured, sold and/or distributed the subject 2003 Mitsubishi Montero Sport that caused Dora Bernard's death.

38.    Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants knew, or in the exercise of reasonable care, should have known, the subject vehicle was unreasonably dangerous when being used in a reasonable and foreseeable manner.

39.    As a proximate consequence of the unreasonably dangerous design and/or manufacture of the subject 2003 Mitsubishi Montero Sport, Dora Bernard was severed in half and ejected from the 2003 Mitsubishi Montero Sport. Dora Bernard died as a result of the ejection.

WHEREFORE, Plaintiff requests compensatory damages to adequately compensate for the death and damages to Dora Bernard, and for punitive damages to punish for the wrong and deter such wrongful conduct in the future in such an amount as a jury may award, plus the costs of this action.

COUNT TWO
(Claim Under AEMLD)

40.    Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if set out here in full.

41.    Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants sold, distributed, or otherwise placed into the stream of commerce the subject 2003 Mitsubishi Montero Sport in a defective and unreasonably dangerous condition.

42.    Said Defendants failed to warn or otherwise notify the intended users or consumers of the dangerously defective conditions.

43.    Said Defendants reasonably expected that the subject 2003 Mitsubishi Montero Sport would reach the ultimate user or consumer in the condition it was in at the time of the collision.

11

44.    At the time of the collision, the subject 2003 Mitsubishi Montero Sport was in substantially the same mechanical and design condition as it was on the date of its manufacture and sale.

45.    The collision events and the collision mode were reasonably foreseeable and known to Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants.

46.    The 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective and the defects existing therein subjected Dora Bernard to an unreasonable risk of harm in that the vehicle, as designed, had substantial vehicle instability which would lead to the vehicle rollover under foreseeable driving conditions and collisions.

47.    The subject 2003 Mitsubishi Montero Sport was unreasonably dangerous and defective by design and/or manufacture in that the vehicle had inadequate seatbelt restraint systems, door latch, roof structure, was unstable, and generally was uncrashworthy . The inadequate seatbelt restraint system, door latch, roof structure, instability and general uncrashworthiness subjected Dora Bernard to an unreasonable risk of harm under the foreseeable forces and circumstances which occur during an accident or similar type collision. These defects were exacerbated or aggravated by a lack of structural integrity in the subject vehicle.

48.    Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants,

for valuable consideration, designed, manufactured, sold and/or distributed the subject 2003 Mitsubishi Montero Sport that caused Dora Bernard's death.

49.    Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants knew, or in the exercise of reasonable care, should have known, the subject vehicle was unreasonably dangerous when being used in a reasonable and foreseeable manner.

50.    As a proximate consequence of the unreasonably dangerous design and/or manufacture of the subject 2003 Mitsubishi Montero Sport, Dora Bernard was severed in half and ejected from the 2003 Mitsubishi Montero Sport. Dora Bernard died as a result of the injuries.

WHEREFORE, Plaintiff requests compensatory damages to adequately compensate for the death and damages to Dora Bernard, and for punitive damages to punish for the wrong and deter such wrongful conduct in the future in such an amount as a jury may award, plus the costs of this action.

## COUNT THREE
### (Negligence and/or Wantonness)

51.    Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if set out here in full.

52.    Defendants Mitsubishi America, Mitsubishi Corp., Daimler, Takata, Takata American, Takata Inc., Takata Restraint, Takata Seat Belt, Jackson, and Fictitious Defendants

negligently and/or wantonly designed, manufactured, sold, failed to warn and/or failed to provide adequate recalls on the subject 2003 Mitsubishi Montero Sport's vehicle instability, inadequate seatbelt restraint system, inadequate door latch, inadequate roof structure, instability and general uncrashworthiness, all of which form the subject matter of this lawsuit and more specifically:

a.  Negligently and/or wantonly failing to design and/or manufacture the vehicle so that it would be stable and less susceptible to rollovers;

b.  Negligently and/or wantonly failing to design the subject 2003 Mitsubishi Montero Sport to perform as safely as an ordinary consumer of the product would have expected when used in a manner reasonably foreseeable by the Defendants;

c.  Negligently and/or wantonly failing to warn owners and operators of the vehicle of the hazards involved in the use of the vehicle, which such hazards being ones which an ordinary user would not reasonably expect;

d.  Negligently and/or wantonly failing to properly test the 2003 Mitsubishi Montero Sport for safety and defects;

e.  Negligently and/or wantonly failing to design and/or manufacture the vehicle so that its seatbelt safety restraint system, door latch systems and roof structure would not malfunction;

f.  Negligently and/or wantonly failing to design and/or manufacture the vehicle so that occupants involved in a rollover would be contained within the vehicle as opposed to being ejected from the vehicle.

53.  As a proximate consequence of the unreasonably dangerous design and/or

14

manufacture of the subject 2003 Mitsubishi Montero Sport, Dora Bernard was ejected from the vehicle. Dora Bernard died as a result of the ejection.

WHEREFORE, Plaintiff requests compensatory damages to adequately compensate for the death and damages to Dora Bernard, and for punitive damages to punish for the wrong and deter such wrongful conduct in the future in such an amount as a jury may award, plus the costs of this action.

### COUNT FOUR
#### (Negligence/Wantonness)

54.    Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if set out here in full.

55.    The "phantom vehicle" and/or Fictitious Defendants negligently and/or wantonly operated the motor vehicle so as to cause it to collide or force off the roadway the vehicle being operated by Dora Bernard.

56.    The "phantom vehicle" and/or Fictitious Defendants had the duty to operate the vehicle in a safe and reasonable manner.

57.    The "phantom vehicle" and/or Fictitious Defendants breached their duty to operate the vehicle in a reasonably safe manner when they allowed said vehicle to contact and force off the roadway the vehicle being driven by Dora Bernard.

58.    The "phantom vehicle" and/or Fictitious Defendants were negligent and/or wanton in the operation of their vehicle and formed the proximate cause of the collision or

15

force off the roadway the vehicle of Dora Bernard.

59.     As a proximate result, Dora Bernard was severed in half and ejected from the 2003 Mitsubishi Montero Sport. Dora Bernard died as a result of the ejection.

WHEREFORE, Plaintiff demands judgment against the "phantom vehicle" and/or Fictitious Defendants in a fair and reasonable amount of compensatory and/or punitive damages, plus costs.

### COUNT FIVE
#### (Negligence/Wantonness)

60.     Plaintiff realleges and incorporates by reference all prior paragraphs of the Complaint as if set out here in full.

61.     Fictitious Defendants are those individuals and/or entities specifically enumerated in the caption above whose negligence, wantonness or other wrongful conduct caused or contributed to cause the occurrence made the basis of this lawsuit.

62.     Fictitious Defendants are those individuals and/or entities specifically enumerated above who owed a duty to Dora Bernard.

63.     Fictitious Defendants breached the duty owed to Plaintiff Dora Bernard.

64.     Fictitious Defendants' negligent and/or wanton conduct and breach of the duty owed to Dora Bernard formed the proximate cause and/or combined to form the proximate cause of injuries and damages suffered by Dora Bernard which caused her death.

WHEREFORE, Plaintiff demands judgment against Fictitious Defendants in a fair and reasonable amount of compensatory damages and punitive damages, plus costs.

16

## COUNT SIX
### (Wrongful Death Act)

65.     Plaintiff realleges and incorporates all prior paragraphs of the Complaint as if fully set out herein.

66.     Pursuant to Code of Alabama, §6-5-410, which is known as the Alabama Wrongful Death Act, the Defendants acted negligently, wantonly and/or recklessly.

67.     As a result of the Defendants' actions, Dora Bernard was killed.

68.     As a proximate result of the negligent, wanton and/or reckless conduct of the Defendants, and the unreasonably dangerous design and/or manufacture of the subject 2003 Mitsubishi Montero Sport, Dora Bernard was killed.

WHEREFORE, Plaintiff demands judgment against Defendants in a fair and reasonable amount of compensatory damages and punitive damages, plus costs.

RESPECTFULLY submitted this 2 day of _____, 2006.

_____
MICHAEL G. STRICKLAND (STR032)
BLAINE C. STEVENS (STE091)
*Attorneys for Plaintiffs*

OF COUNSEL:
STRICKLAND & KENDALL, L.L.C.
420 S. Lawrence Street [36104]
P.O. Box 99
Montgomery, AL  36101-0099
(334) 269-3230
(334) 269-3239 / fax

17

PLAINTIFF DEMANDS A TRIAL BY JURY
ON ALL ISSUES OF THIS CAUSE.

OF COUNSEL



From: Internet Sales [internetsales@djmitsubishi.com]
Sent: Monday, March 29, 2004 1:53 PM
To: Michael Strickland
Subject: Re: Joel Hardy

1. WE SHIP CARS ALL OVER THE COUNTRY, TO CALIF, ARIZ,

OHIO, NY, FLA ETC. BUT WE DO NOT HAVE PERMISSION

FROM THE CUSTOMER TO GIVE OUT THAT INFO.


2. I HAVE IT IN BLACK


3. WE WOULD FED EX YOU THE PAPERWORK TO SIGN..

FED EX CERTIFIED CHECK OR TRANSFER ETC. WE DO

THIS ALL THE TIME.


4. YOU CAN TAKE DELIVERY WHENEVER YOU DECIDE. WE

WOULD SHIP IT AFTER ALL PAPERWORK IS SIGNED AND

MONIES IN HOUSE.




----- Original Message -----

**From:** Michael Strickland

**To:** Internet Sales

**Sent:** Monday, March 29, 2004 2:16 PM

**Subject:** RE: Joel Hardy

your price sounds workable. Just a few more questions.

Do you have it in black?

When could I take delivery if we can agree on the price with delivery?

Would I fed ex a certified check or how would we do the money transfer and signing of the documents?

I see that you say you don't have any references that you sold cars in Alabama but Does that mean that you have never delivered a car to somebody here, sold a car to somebody here OR that you just don't have a reference for a person here?

Thanks.

Michael

-----Original Message-----
**From: Internet Sales [mailto:internetsales@djmitsubishi.com]**
**Sent: Monday, March 29, 2004 12:02 PM**
**To: Michael Strickland**
**Subject: Re: Joel Hardy**

# A MONTERO SPORT WITH MSRP OF $25,544.00 I CAN

SELL YOU FOR $23,900.00 DELIVERED. YOU PAY TAX IN

ALABAMA.


I DO NOT HAVE ANY REFERENCES WHERE WE SOLD CARS

IN ALABAMA.


----- Original Message -----

From: Michael Strickland

To: sales@donjacksonmitsubishi.com

Sent: Monday, March 29, 2004 11:26 AM

Subject: Joel Hardy



Dear Mr. Hardy,


My wife forwarded the email that I sent concerning a Mitsubishi Montero
Limited. I was actually inquiring about the Sport and must have clicked
on the wrong location on the internet for the Limited.


What is the price for a fully loaded Sport?

I see that you can bring it on a roll back wrecker but due to the fact I am in Alabama and you are in Georgia (which has lower sales tax), can you give me some references of some people in Alabama that you have delivered cars to; that purchased from you; the price of the delivery and the out the door price of the Sport? I prefer Black.

Thanks
Michael
----- Original Message -----
From: Internet Sales < mailto:internetsales@djmitsubishi.com >
To: ewstrickland@knology.net < mailto:ewstrickland@knology.net >
Sent: Wednesday, March 24, 2004 7:44 AM
Subject: Re: TCM - Purchase Request

Michael,

Thank you for your inquiry on this vehicle.

1st - This vehicle is a demo. Our GM has been driving it up until now.

It has approx 4000 miles on it. Are you still interested in a demo?

2nd - We can delivery this vehicle by "roll-back" wrecker if desired.

3rd - It is a Montero "Limited" not a Montero Sport. There is a lot of

difference between the two. M36006 is the Montero and I believe that

this is the vehicle you are inquiring about. It is also a 2003 New Vehicle

not a 2004.

4th - The MSRP is $38,422.00. You can buy it for $33,300 delivered

to your address.

If you are still interested or have any questions please let me know. My

name is Joel Hardy and I am the Internet Manager here at Don Jackson

Mitsubishi. We are located in Union City, Georgia.

----- Original Message -----
From: ewstrickland@knology.net <
mailto:ewstrickland@knology.net >
To: sales@donjacksonmitsubishi Sent: Tuesday, March 23,
2004 10:06 PM Subject: TCM - Purchase Request First Name:
MichaelLast Name: StricklandStreet Address: City: State; Zip:
Daytime Phone: 334-269-3239Evening Phone: Best Time To
Call: DaytimeEmail: < mailto:sales@donjacksonmitsubishi.com
>ewstrickland@knology.net <
mailto:ewstrickland@knology.net >
Fax Number:
Bank or Credit Union: Compass
New Vehicle Information:
VIN: JA4NW51SX3J041682
StockNumber: M36006
InventoryYear: 2003
InventoryMake: MITSUBISHI
InventoryModel: MONTERO
Color: SOLANO BLACK PEARL
Description:
Options: "Air Conditioning,Cruise Control,Keyless Entry
System,Power Steering,Power Brakes,Aluminum/Alloy
Wheels,Power Antenna,Premium Audio System,Bucket
Seats,Heated Front Seats,Leather Seats,Split Folding Rear
Seat,Third Seat,Power Windows,Privacy Glass,Power
Moonroof,Alarm System,Power Driver Seat,Lighted Entry
System,Digital Clock,Fog Lights,Power Door Locks,Exterior
Spare Tire Carrier,Tilt Steering Wheel,Leather And Wood
Steering Wheel,A tomatic Stability Control,Traction Control
System,Center Console,Intermittent Wipers,Locking
Differential,Luggage Rack,Rear Window Defroster,Rear
Window Wiper,Running Boards,Skid Plates,Tachometer,Trip
Computer,Four Wheel Anti-Lock Brakes,Four Wheel
Drive,Turning Circle: 37.4',Traction Control,Stability
Control,Passenger Airbag,Height 71.5",Length 190.2",Width
74.8",Maximum Seating: 7,39.8 Cubic Feet Luggage
Capacity,Front Head Room: 39.8",Front Hip Room: 57.7",Front
Leg Room: 42.3",Front Shoulder Room: 58.5",Rear Head
Room: 38",Rear Hip Room: 55.5",Rear Leg Room: 35.2",Rear
Shoulder Room: 57.5",92 Cubic Feet Maximum Cargo
Capacity,23.8 Gallon Fuel Tank,Wheelbase: 109.7",Curb
Weight: 4784 Lb,Gross Vehicle Weight Max: 6085 Lb,Ground
Clearance: 8.6",Maximum Towing Capacity: 5000
Lb,Maximum Payload 1301 Lb,Built In Japan"
Price: 38422

CarTrim: LIMITED
Doors: 4
BodyStyle: 4DR UTILITY
Transmission:
Mileage: 5
**Tradein Vehicle Information:**
Year: 2004
Make:
Model:
Milea e:
Color:
**Time Frame:** Ready to Buy Now
**How Did You Find This Site:** Other
**Comments:**

I am interested in the above vehicle. Would you be able to
deliver the vehicle to the Montgomery, Alabama area? Have
you sold vehicles to people in my area, if so can you give me
some refereces? If you have sold and delivered vehicles in my
area, can you also give me a reference for the people that have
purchased from you that live in Alabama and you have
delivered their vehicle to them? What is the cost to me
including delivery of the fully loaded 2004 montero sport, not
the msrp. There will not be a trade in or financing. Thanks.

Michael G. Strickland

Strickland, Chancellor & Kendall, L.L.C.
P.O. Box 99
420 South Lawrence Street (36104)
Montgomery, Alabama 36101
334-269-3230
334-269-3239 (fax)
mgs@jurytrial.us